# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS ROBERT FERRETTI,     :
    Plaintiff,              :
                          :
    v.                  :         CIVIL ACTION NO. 21-CV-3530
                          :
NORTHAMPTON COUNTY JAIL, *et al.*,:
    Defendants.         :

## MEMORANDUM

**YOUNGE, J.**                                        **SEPTEMBER 22, 2021**

Thomas Robert Ferretti, a convicted inmate housed at Northampton County Jail,[1] filed a civil rights Complaint pursuant to 42 U.S.C. § 1983.  Named as Defendants are Northampton County Jail ("NCJ"), the Northampton County Court of Common Pleas, Northampton Police, "Northampton County Drug & Alcohol, Alfonso," and "Northampton County Probation, Matt Cwynar."[2]  Ferretti also seeks leave to proceed *in forma pauperis* and has submitted his

---

[1] A review of public records indicates that Ferretti was arrested by Northampton Borough Police on December 17, 2019, on charges of criminal trespassing into a structure, criminal mischief, and driving under the influence of a controlled substance. *Commonwealth v. Ferretti*, CP-48-CR-61-2020 (C.P. Northampton).  Ferretti pled guilty to the criminal mischief and DUI charges on August 5, 2020, and was sentenced to a maximum of 12 months incarceration.  (*Id.*)  Probation revocation hearings were held on December 3 and December 18, 2020.  (*Id.*)  On January 15, 2021, Ferretti was given an additional sentence of 6 months incarceration.  (*Id.*)  Another probation revocation hearing was held on August 4, 2021, two days before Ferretti filed this lawsuit.  (*Id.*)  The docket does not reflect an adjudication of that revocation.

Ferretti was also arrested by Coplay Borough Police on February 6, 2018, on a harassment charge. *Commonwealth v. Ferretti*, CP-39-CR-65-2018 (C.P. Lehigh).  Ferretti pled guilty to the charge on December 1, 2018, and was sentenced to a maximum one year incarceration.  *Id.*  Probation revocation hearings were held in that case as well.

[2] All Defendants are named in their official capacities, other than Defendant "Northampton County Drug & Alcohol, Alfonso" who is named in his individual and official capacities.  Although Ferretti wrote the names of Matt Cwynar and Alfonso in the list of Defendants, he put those names on the line asking for the named defendant's "Job or Title."  (*See* ECF No. 2 at 3.)  He did not write those names in the caption of the Complaint.  It is unclear if Ferretti intended to sue only these named individuals, or the individuals and the agencies where they appear to be employed, "Northampton County Drug & Alcohol" and "Northampton County Probation."  Construing the Complaint liberally, the Court will analyze Ferretti's claims as if he named both the individuals and their employers.  The Court notes that, from the address Ferretti provided for "Northampton County Drug & Alcohol," namely 2801 Emrick

1

institutional account statement. For the reasons that follow, the application to proceed *in forma pauperis* will be granted. Certain claims in the Complaint will be dismissed with prejudice, certain claims will be dismissed without prejudice, certain claims will be severed from this case, and one claim will be stayed. Ferretti will be granted leave to reassert the severed claims in a new civil action, and granted limited leave to return with an amended complaint in this case if he is able to cure the defects the Court has identified in the claims dismissed without prejudice.

## I.    FACTUAL ALLEGATIONS

Ferretti's allegations are lengthy and concern several unrelated events. The bulk of his allegations are contained in a handwritten addendum to the form Complaint he filed and concern events that occurred at NCJ between November 20, 2020 and March 1, 2021, and from June 11, 2021 to the present. (ECF No. 2 at 5.)[3] Ferretti asserts he was attacked by another inmate while using the telephone. (*Id.* at 12.) Non-defendant Correctional Officer "Steve" screamed "Hey – Stop" and started to move toward the incident when he fell and cut his arm. (*Id.*) Steve locked Ferretti and the other inmate in their respective cells, and then asked Ferretti if he wanted to report the incident. (*Id.* at 13.) He told Ferretti if he reported the incident he would lose his "out time" – referring to the time Ferretti could be out of his cell each day under COVID-19 protocols. (*Id.* at 14.) He responded to Steve that he did not want to report the incident and Steve reopened Ferretti's cell. (*Id.*)

Ferretti then began to feel headache pain and the top of his head began to swell. (*Id.*) He asked Steve if he could go to the medical unit and Steve said he would call them. (*Id.*) No one

---

Blvd, Bethlehem (ECF No. 2 at 3), he appears to refer to Northampton County Drug & Alcohol Division, a Northampton County agency located at 2801 Emrick Blvd, Bethlehem. *See* https://www.northamptoncounty.org/HS/DRGALC/Pages/HowTreatment.aspx (last viewed Sept. 13, 2021).

[3] The Court adopts the pagination supplied by the ECF/CM docketing system.

responded and Ferretti received no medical attention at that time.  (*Id.*)  Ferretti received a

medical pass that afternoon and asked a nurse for Tylenol, peroxide, and a bandage for his

bleeding head and leg.  (*Id.* at 15.)  The nurse told him to fill out a sick call slip and refused to

give him any medical attention.  (*Id.*)  He alleges he received no medical attention even though

Steve was able to have the cut on his arm treated.  (*Id.* at 23.)

      At the end of out time, Ferretti allegedly told Steve that he wanted to report the incident

from earlier that day.  Steve was allegedly angry at Ferretti since he did not want to report it

earlier, and because Steve's shift was about to end.  (*Id.* at 15-16.)  Ferretti alleges Steve had let

the other inmate involved in the altercation out of his cell "to do a favor for someone and let

them make a phone call when it wasn't his time to be out of his cell [and] jeopardized my

personal security and the safety and security of the prison population."  (*Id.* at 17.)  Steve told

Ferretti that if he reported the incident the inmate population "will label [him] a 'rat' or a

'snitch,'" which caused Ferretti to feel intimidated.  (*Id.* at 17-18.)  Steve told him he would let a

supervisor know that he wanted to file a report.  (*Id.* at 18.)  After Steve's shift ended, a

supervisor came past Ferretti's cell, and he told the supervisor to look at the video of the phone

area.  Some minutes later, several correctional officers handcuffed Ferretti and moved him to

administrative segregation.  (*Id.* at 19.)  On the way, one of the officers told him to "smarter up"

and "keep [his] mouth shut" for his own protection.  (*Id.*)  As he was being escorted off the

block, the other inmates started to call him "snitch," "rat" and "cop" and threatened to kill him

and his family.  (*Id.* at 19-20.)  Inmates in the administrative segregation area allegedly already

knew why Ferretti was moved there before he arrived.  (*Id.* at 21-22.)

      Ferretti also asserts that he was loaned money by an inmate named Shareef and arranged

for his mother to get a money order to repay Shareef through his prison account.  (*Id.* at 20.)

Shareef apparently used the receipt for the payment to let other inmates know the name of

Ferretti's mother, causing Ferretti to be concerned for his mother's safety.  (*Id.* at 21.)  He told a lieutenant about this concern, but he was told "to focus on myself and that I should be concerned about my own safety."  (*Id.*)  Ferretti asserts that his mother died on December 31, 2020 and his father died in April 2021, but he does not specifically allege that either death was related to the threats he received an NCJ.  (*Id.*)

Ferretti alleges next that "due to an incarceration and a mistake by the courts in Northampton County," he was unable to attend his mother's funeral.  (*Id.*)  He was also allegedly told by Defendant Cwynar, his probation officer, that it would be a violation to attend his father's funeral since it was to be held out of state.  (*Id.*)  Although it is unclear from the Complaint, he appears to allege he was out of jail at this time and Cwynar accused him of violating his probation by attending the funeral, an allegation that Ferretti denies.  (*Id.* at 24.)  He also alleges his inability to attend "has a lot to do with a PREA (Prison Rape Elimination Act) incident that occurred" (*id.* at 22 (parenthetical in original)), but it is unclear what Ferretti means by this allegation.  According to Ferretti, he has been incarcerated nine times for probation violations.  (*Id.* at 23.)

Ferretti alleges that, as a result of the inmate assault, his head is very sensitive, and he gets frequent migraine headaches causing blurry vision and sensitivity to light.  (*Id.* at 25.)  He also has paranoid-schizophrenic tendencies from the experience and cannot hold a job.  (*Id.*)

On the form Complaint itself, Ferretti alleges that "Probation gave me legal advice.  Drug & Alcohol Evaluator (apparently Defendant Alfonso) misused his authority based upon a previous interaction that was not pleasant.  Error of the Courts wrongfully imprisoned."  (*Id.* at 4.)  He also alleges his probation was violated because he was caught "scattering rubbish" but also alleges he was wrongfully accused "of keeping my girlfriend locked up against her will at my house – police (presumably Defendant Northampton Police) searched residence and left.

Later on arrested me for reporting a crime that occurred next door to my house." (*Id.* at 5.)  As relief on his claims, Ferretti seeks an apology, to have his criminal record cleared, and his parents to be returned to life to make up for three years, consistent with the length of time he was allegedly imprisoned due to court errors.  He also seeks money damages.  (*Id.*; ECF No. 2-1.)

## II.     STANDARD OF REVIEW

Because Ferretti appears to be unable to pay the full amount of the filing fee upfront, the Court will grant him leave to proceed *in forma pauperis*.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Shorter v. United States*, No. 20-2554, 2021 WL 3891552, at *5 (3d Cir. Sept. 1, 2021) ("'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As Ferretti is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

---

[4] Because he is a prisoner, Ferretti will be required to pay the full amount of the filing fee in installments, as required by the Prison Litigation Reform Act.

Ferretti seeks to assert constitutional claims.  The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.      Claims Against the Northampton Police

Ferretti's claims against the Northampton Police must be dismissed under 28 U.S.C. § 1915(e)(2)(B) because they are not plausible.  Following the decision in *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), courts concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions.  *See e.g. Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993).  Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not.  *Id.*; *Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (per curiam) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability" citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir.1988)); *Hadesty v. Rush Twp. Police Dep't*, No. 14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016).

Accordingly, Ferretti's claims against the Northampton Police is not plausible and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

> **B.** **Claims Against the Northampton County Court of Common Pleas, Northampton County Probation Department and the Official Capacity Claim Against Cwynar**

Ferretti's claims against the Northampton Court of Common Pleas, its Probation Department, and the official capacity claim against Cwynar must also be dismissed under 28 U.S.C. § 1915(e)(2)(B). The Court of Common Pleas, as part of Pennsylvania's unified judicial system, shares in the Commonwealth's Eleventh Amendment immunity. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005). Also, the United States Court of Appeals for the Third Circuit has repeatedly held that judicial district probation and parole departments are also entitled to Eleventh Amendment immunity. *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 197-98 (3d Cir. 2008) (holding that Pennsylvania's Judicial Districts are entitled to immunity from suit under the Eleventh Amendment) (citing *Benn* 426 F.3d at 241). The official capacity claim against Cwynar, who is identified as Ferretti's probation officer and, hence, an employee of the Northampton County Probation Department, is also treated as a claim against the Commonwealth. *See A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003) (holding that suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment). As Pennsylvania has not waived its sovereign immunity, and because Congress has not explicitly abrogated immunity through authorizing legislation, the Eleventh Amendment operates as a bar to claims for damages under § 1983 against the Northampton Court of Common Pleas, the Northampton County Probation Department, and the official capacity claim against Cwynar.

## C.      Claims Against Northampton County Jail

The § 1983 claim against NCJ is also dismissed because a jail is not a "person" under

Section 1983. *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1

(E.D. Pa. July 20, 2010); *Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL

4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F.

Supp. 271 (E.D. Pa. 1976).[5]

---

[5] The Court notes that, although Ferretti makes extensive allegations concerning the conditions he encountered while confined at NCJ, including the alleged assault and failure to provide him medical treatment, he does not tie these allegations to any of the named Defendants, other than NCJ. Because NCJ is not a proper party subject to suit under § 1983 and Ferretti's allegations about the conditions of confinement at NCJ, as well as any possible claim involving the alleged failure to treat his injury, appear to be misjoined to his claims involving probation revocations, the Court will sever the claims based on conditions of confinement from the claims based on probation revocations so that they may proceed in separate lawsuits.

Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action." "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *McKinney v. Prosecutor's Office*, No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Indeed, "[t]he courts[] . . . have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison, let alone multiple prisons." *McKinney*, 2014 WL 2574414, at *15. To remedy a misjoinder, a Court may add or drop a party or sever any claims. Fed. R. Civ. P. 21. "A district court has broad discretion in deciding whether to sever a party pursuant to Federal Rule of Civil Procedure 21." *Boyer v. Johnson Matthey, Inc.*, No. 02-8382, 2004 WL 835082, at *1 (E.D. Pa. Apr. 16, 2004).

Here, because the factual allegations in the Complaint can be broken down into essentially two distinct sets of events, the Court will sever Ferretti's claims based conditions of confinement at NCJ and possible medical deliberate indifference claims from his claims involving probation revocations. Ferretti will be granted leave to file a new civil action to raise these claims against appropriate defendants who were personally involved in the alleged constitutional deprivations. Ferretti should take heed that these claims are subject to Pennsylvania's two-year statute of limitation. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (holding that the timeliness of a § 1983 claim is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose); 42 Pa. Cons. Stat. § 5524(2)) (providing a two-year limitations period).

### D.       Claims Against Northampton County Drug and Alcohol

Claims against a county agency like Northampton County Drug and Alcohol Division are treated as claims against the county itself.  *Kane v. Chester Cty. Dep't of Child., Youth & Fams.*, 10 F. Supp. 3d 671, 686 (E.D. Pa. 2014) (concluding that the Chester County Department of Children, Youth and Families is not a legal entity separate from the County of Chester and evaluating claims as if brought against the County itself).  County governments can be liable as "persons" under § 1983, however, this liability extends only to "their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)); *see Monell*, 436 U.S. at 665-83.  This limitation is based on the well-established principle that municipalities "are not vicariously liable under § 1983 for their employees' actions." *Connick*, 563 U.S. at 60; *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.") (emphasis in original).  To plead a plausible basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694; *Hatfield v. Berube*, 714 F. App'x. 99, 102 n.1 (3d Cir. 2017) ("Pennsylvania county offices . . . are treated as municipalities for purposes of *Monell*." (citing *Mulholland v. Gov't Cty. of Berks, Pa.*,706 F.3d 227, 237 (3d Cir. 2013))).

"To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a

given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

As the Third Circuit Court of Appeals recently stated,

If the alleged policy or custom at issue is a failure to train or supervise (as it is here), the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's] employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339,357 (3d Cir. 1999)).  "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)).  Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely . . . result in the violation of constitutional rights" — i.e., to show that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

*Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).

Ferretti has failed to allege that any injury he suffered was caused by a policy or custom of Northampton County.  Accordingly, his claim against the Northampton County Drug and

Alcohol Division must be dismissed because it is not plausible.  However, as the Court cannot say at this time that Ferretti can never state a plausible claim, Northampton County Drug and Alcohol Division will be dismissed without prejudice and with leave to amend should Ferretti be capable of curing the defect the Court has identified in his claim against Northampton County Drug and Alcohol Division.

  **E.**  **Claims Against Alfonso**

  Ferretti has named Defendant Alfonso in both his individual and official capacities. Claims against County officials like Alfonso named in their official capacity are indistinguishable from claims against the County.  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 690, n. 55 (1978))).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*  Thus, Ferretti's official capacity claim is essentially the same as his claims against the Northampton County Drug and Alcohol Division.  As the Court explained, Ferretti's claim against Northampton County Drug and Alcohol Division must be dismissed as implausible because he failed to allege that a policy or custom of Northampton County caused a constitutional violation.  For the same reason, the official capacity claim against Alfonso must also be dismissed without prejudice and with leave to amend if Ferretti is capable of alleging he suffered a constitutional violation due to a County custom or policy.

  The individual capacity claim against Alfonso must also be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).  The allegation that Alfonso "misused his authority" is conclusory.  *See Iqbal*,  556 U.S. at 678 (holding that conclusory allegations do not suffice).  The allegation that Alfonso "was not pleasant" is both conclusory and fails to allege a plausible constitutional claim. *See, e.g.*, *Castro v. Chesney*, No. 97-4983, 1998 WL 767467, at *13 (E.D. Pa. Nov. 3, 1998)

(stating that unpleasantness does not rise to the level of a constitutional violation); *Richardson v. Didok*, No. 19-5072, 2021 WL 3828645, at *1 (E.D. Pa. Aug. 25, 2021) (unpleasant prison conditions do not give rise alone to a constitutional violation). Ferretti will be permitted the opportunity to amend these claims as well.

### F.    Individual Capacity Claim Against Cwynar

Ferretti's allegations against Defendant Cwynar are not clear. Cwynar appears to have told him that it would be a probation violation to attend his father's funeral since it was to be held out of state. (ECF No. 2 at 25.) Cwynar apparently accused him of violating his probation by attending the funeral and took action to revoke his probation. (*Id.* at 24.) He also alleges Cwynar "gave me legal advice" that caused him to be wrongfully imprisoned. (*Id.* at 4.) This appears to be the basis for Ferretti's request to "have his criminal record cleared." (*Id.* at 5.) To the extent that Ferretti seeks either release from custody or to have his record cleared, that relief is unavailable in a § 1983 action. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.").

The public record reflects that Ferretti had probation revocation hearings on December 3 and December 18, 2020, and on January 15, 2021, he was given an additional sentence of 6 months incarceration. Another probation revocation hearing was held on August 4, 2021, two days before Ferretti filed this lawsuit, but the docket does not reflect the revocation has been adjudicated. To the extent Ferretti's claim against Cwynar in his individual capacity for money damages is based on his actions in revoking Ferretti's probation in December 2020 through January 2021, the claim must dismissed without prejudice as barred by the decision in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("[T]o recover damages [or other relief] for allegedly

unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" (footnote and citation omitted)).  The doctrine set forth in *Heck* has been extended to civil rights cases challenging parole and probation revocations.  *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006); *Burton v. Delaware Cty. Court House*, No. 12-4175, 2012 WL 3223691, at *2 (E.D. Pa. Aug. 7, 2012).  The record does not reflect that Ferretti's revocation and sentence have been reversed or otherwise declared invalid.  Accordingly, a claim for money damages based on that revocation and sentence may not proceed at this time and the claim will be dismissed without prejudice. Ferretti may reassert this claim in a new civil action if his probation revocation and sentence are ever reversed or otherwise declared invalid.

Any claim based on the revocation hearing held on August 4, 2021, also cannot proceed. The public docket reflects that no decision on that revocation has been reached, accordingly, the Court must abstain from adjudicating Ferretti's civil rights claim.  Abstention "is a judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or state agency will have the opportunity to decide the matters at issue." *Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 746 (3d Cir. 1982).  In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court "established a principle of abstention when federal adjudication would disrupt an ongoing state criminal proceeding." *Yang v. Tsui*, 416 F.3d 199, 202 (3d Cir. 2005) (discussing *Younger*).

*Younger* abstention "is premised on the notion of comity, a principle of deference and 'proper respect' for state governmental functions in our federal system." *Evans v. Court of*

*Common Pleas, Delaware Cty., Pa.*, 959 F.2d 1227, 1234 (3d Cir. 1992).  Comity concerns are especially heightened when the ongoing state governmental function is a criminal proceeding. *Id.*  The specific elements that warrant abstention are that "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989).  Exceptions to the *Younger* doctrine exist where irreparable injury is "both great and immediate," where the state law is "flagrantly and patently violative of express constitutional prohibitions," or where there is a showing of "bad faith, harassment, or . . . other unusual circumstance that would call for equitable relief." *Younger*, 401 U.S. at 46, 53-54.  The exceptions are to be narrowly construed.  *Hall v. Pennsylvania*, No. 12-2373, 2012 WL 5987142, *2 (M.D. Pa. 2012) (citing *Loftus v. Twp. of Lawrence Park*, 764 F. Supp. 354, 357 (W.D. Pa. 1991)).

The *Younger* requirements are clearly met in this case.  First, adjudication of the revocation proceeding is still pending.  Second, the state proceedings implicate the important interest of enforcing the Commonwealth's criminal laws.  Third, the criminal proceedings provide Ferretti an adequate opportunity to argue in the state forum that the revocation was legally erroneous or factually incorrect.  This Court may assume that the state procedures will afford him an adequate remedy.  *See Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995) (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)) ("Initially, we must presume that the state courts are able to protect the interests of the federal plaintiff.").  Further, there is nothing in the Complaint to indicate that Ferretti falls within any of the narrow exceptions to the *Younger* doctrine.  *See also Marks v. Stinson*, 19 F.3d 873, 882 (3d Cir. 1994) ("A federal court will only consider *Younger* abstention when the requested relief would constitute federal interference in state judicial or quasi-judicial proceedings").  Accordingly, it is appropriate to abstain from

entertaining this aspect of Ferretti's individual capacity claim for money damages against Cwynar. *Accord Ellis v. Mondello*, No. 05-1492, 2005 WL 1703194, at *3 (D.N.J. 2005) ("[A]ssuming the criminal action is still pending in a state trial or appellate court, review of the state court proceedings would be barred; a district court cannot interfere in a pending state criminal action in order to consider issues that a plaintiff can raise there.").

## IV.    CONCLUSION

For the reasons stated, Ferretti's Complaint will be dismissed in part with prejudice, dismissed in part without prejudice, any claim subject to *Younger* abstention will be stayed, claims based on prison conditions at NCJ will be severed, and Ferretti will be given a limited opportunity to file an amended complaint.  The accompanying Order dismisses with prejudice and terminates as Defendants Northampton County Jail, the Northampton County Court of Common Pleas, the Northampton County Probation Department, and Northampton Police.  The official capacity claim against Defendant Matt Cwynar is also dismissed with prejudice.  Those individual capacity claims against Cwynar subject to the *Heck* bar will be dismissed without prejudice, those claims subject to *Younger* abstention will be stayed, and no leave to amend will be granted as to these claims.  The claim against the Northampton County Drug & Alcohol Division, and the official and individual capacity claims against Alfonso are dismissed without prejudice.  Ferretti will be granted leave to file an amended complaint if he is capable of curing the defects the Court has identified in his claims against the Northampton County Drug & Alcohol Division, and the official and individual capacity claims against Alfonso.  Ferretti may also raise any claim about conditions of confinement at NCJ in a new civil action naming appropriate Defendants who were personally involved in any alleged constitutional violation.

An appropriate order follows.

BY THE COURT:


 /s/ John Milton Younge_____
**JUDGE JOHN MILTON YOUNGE**